UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1147

WESTMORELAND COAL COMPANY,

Petitioner,

versus

CHARLES M. AMICK; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(03-256-BLA)

Argued: September 28, 2004          Decided: December 6, 2004

Before WILKINSON and WILLIAMS, Circuit Judges, and Roger W. TITUS,
United States District Judge for the District of Maryland, sitting
by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Douglas Allan Smoot, JACKSON KELLY, P.L.L.C., Charleston,
West Virginia, for Petitioner.  Seth A. Steed, WASHINGTON & LEE
UNIVERSITY, School of Law, Lexington, Virginia; Richard Anthony
Seid, UNITED STATES DEPARTMENT OF LABOR, Black Lung Longshore Legal
Services Division, Washington, D.C., for Respondents.  **ON BRIEF:**
Kathy L. Snyder, JACKSON KELLY, P.L.L.C., Morgantown, West
Virginia, for Petitioner.  Mary Z. Natkin, James M. Phemister,
WASHINGTON & LEE UNIVERSITY, School of Law, Lexington, Virginia,
for Respondent Amick.  Howard M. Radzely, Solicitor of Labor,
Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel

for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Federal Respondent.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

On March 29, 2000, Charles Moore Amick filed his third claim for benefits under the Black Lung Benefits Act (the BLBA or the Act), 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 2004). An Administrative Law Judge (ALJ) reviewed Amick's claim, found that Amick had established a material change in condition since his prior black lung benefits claim, and awarded benefits. Because the ALJ found that the evidence did not establish the month of onset of total disability, the ALJ applied the default entitlement date provided for in 20 C.F.R. § 725.503 (2002) and made benefits payable beginning with the month that the claim was filed. The Benefits Review Board (Board) affirmed, with one judge dissenting. Westmoreland Coal Company now petitions for review of the Board's order. Because the ALJ's factual findings regarding the credibility of the various doctors are not supported by substantial evidence, we vacate the Board's order and remand to the ALJ to reconsider the medical evidence.

I.

Amick worked in the coal mine industry for approximately thirty-five years. He had various jobs, including working as a truck driver, mechanic, electrician, dozer operator, timberman, cutting machine operator, and scoop operator. The last eleven years of his coal mine employment were with Westmoreland where he

3

ran a supply motor, which involved loading and unloading roof bolts, timbers, and other supplies. Amick retired in 1983. Amick filed his first claim for benefits in 1980. That claim was denied in 1981 because the evidence did not establish total disability due to pneumoconiosis. Amick filed his second claim on April 15, 1983. This second claim was denied because Amick failed to appear at a hearing or respond to a show cause order. Amick filed this claim, his third, on March 29, 2000.

The record contains reports from nine doctors, all of whom agree that Amick is "totally disabled" as defined by federal regulations. See 20 C.F.R. § 718.204(b)(1) (defining total disability as "pulmonary or respiratory impairment" preventing a miner from performing coal mine work). The medical reports conflict, however, as to the cause of Amick's disability. Amick's doctors -- Drs. Koenig, Cohen, and Rasmussen -- opine that his disability is due, at least in part, to his coal mine employment. The employer's doctors -- Drs. Zaldivar, Stewart, Castle, Daniel, Spagnolo, and Morgan -- uniformly opine that Amick's disability is due to Amick's habit of smoking approximately one pack of cigarettes per day for nearly forty years.

The ALJ discredited reports from several of the employer's doctors "[b]ased on the failure of these physicians to discuss whether or not Claimant's chronic obstructive pulmonary disease was related to his coal mine employment." (J.A. at 623.) The ALJ also

4

noted that the employer's doctors "were discussing the presence of simple coal workers' pneumoconiosis as demonstrated on chest X-ray" and not "legal pneumoconiosis." (J.A. at 623.) Finally, the ALJ discredited Dr. Morgan's opinion because it was "contradictory to the Act." (J.A. at 624.) The ALJ credited Dr. Koenig's report because it gave a "very thorough and complete discussion of Claimant's pulmonary condition." (J.A. at 623.) The ALJ also found Dr. Koenig's report to be the "best reasoned." (J.A. at 624.) Based on this weighing of the medical reports, the ALJ determined that Amick had proven a material change in condition since his last claim for benefits, and on a review of all of the evidence, the ALJ awarded benefits. The Board affirmed, with one judge dissenting.

Westmoreland now petitions for review, arguing that the ALJ erred by (1) failing to make a factual finding that Amick's claim was timely; (2) applying certain amended regulations to Amick's claim, which was pending on the date the regulations became effective; (3) applying the wrong test to determine whether Amick established a material change in condition; (4) weighing the medical opinion evidence; and (5) applying the default entitlement date found in 20 C.F.R. § 725.503.

5

We consider first Westmoreland's argument that the ALJ erred by failing to make a factual finding that Amick's claim was timely. Section 725.308 provides that "[a] claim for benefits . . . shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner . . . ." 20 C.F.R. § 725.308(a). Although Westmoreland argued that Amick's claim was untimely, the ALJ made no explicit findings regarding the timeliness of Amick's claim. On appeal before the Board, Westmoreland once again argued that Amick's claim was untimely. The Board reviewed the evidence and held that Amick's claim was timely because the time limitations do not apply to duplicate claims and because even assuming that the time limits apply, "this claim would not be time-barred because a review of the record before us fails to demonstrate that claimant received a <u>written</u> diagnosis of totally disabling pneumoconiosis." (J.A. at 632 (emphasis added).) The Board did not mention the ALJ's failure to address the timeliness issue, but apparently considered the ALJ's decision on the merits to be a rejection of Westmoreland's timeliness arguments. Westmoreland now argues that the ALJ's failure to make explicit findings regarding the timeliness of Amick's claim requires remand. Alternatively,

Westmoreland argues that the Board erred in requiring the communication with the miner to be written.

Section 921(c) of Title 33, as incorporated by 30 U.S.C.A. § 932 (West 2000), provides us with jurisdiction to entertain this petition. That section provides, in relevant part:

> Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred . . . . [T]he court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified.

33 U.S.C.A. § 921(c)(2001). Although this statute does not set out the standard of review in this court, we are guided by the fact that the Board must affirm the ALJ's findings of fact if they are "supported by substantial evidence in the record considered as a whole." 33 U.S.C.A. § 921(b)(3); 20 C.F.R. § 802.301 (2001). Thus, when reviewing a claim for benefits under the BLBA, "[w]e undertake an independent review of the record, as in the place of the Board, to determine whether the ALJ's factual findings were based on substantial evidence in the record. We review questions of law de novo." Toler v. Eastern Associated Coal Co., 43 F.3d 109, 114 (4th Cir. 1995) (citation omitted).

Turning to the Board's holdings, the Board first held that the time limitations in 30 U.S.C.A. § 932(f) and 20 C.F.R. § 725.308 do not apply to duplicate claims. (J.A. at 632.) Neither the statute

7

nor the regulation, however, makes any distinction between initial and duplicate claims. The statute refers to "[a]ny" claim for benefits and the regulation refers to "[a] claim" for benefits. Based on this language, the Director, to whom we accord substantial deference in the interpretation of the regulations, Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 697 (1991), advocates application of the time limitation to duplicate claims as well as initial claims, and we agree. In the context of duplicate claims, we agree with the Tenth Circuit that

> a final finding by an Office of Workers' Compensation Program adjudicator [or other final adjudicator] that the claimant is not totally disabled due to pneumoconiosis repudiates any earlier medical determination to the contrary and renders prior medical advice to the contrary ineffective to trigger the running of the statute of limitations.

Wyoming Fuel Co. v. Director, Office of Workers' Comp. Program, 90 F.3d 1502, 1507 (10th Cir. 1996).

Perhaps anticipating that we would hold that the time limitations apply to duplicate claims, the Board held in the alternative that Amick's claim was timely because there was no evidence of a written diagnosis communicated to Amick more than three years before he filed his claim. Westmoreland argues that this holding is erroneous because there is no requirement that the miner receive a written communication of his diagnosis. We need not resolve this issue, however, because, as discussed below,

Westmoreland does not cite to any evidence, written or otherwise to trigger the statute of limitations.[1]

Amick filed his claim in March 2000. Accordingly, his claim is untimely if Westmoreland can show that a diagnosis of total disability due to pneumoconiosis was communicated to him before March 1997. The evidence related to the timeliness issue is not in dispute, although the parties draw different inferences from that evidence. The Progress Notes from the Rainelle Medical Center show a diagnosis of "Black Lung 20%" in 1995 and "+CWP - 35 yrs in mines" in 1996, (J.A. at 30, 31), but the Progress Notes do not mention whether Amick was totally disabled or whether the diagnosis was communicated to Amick. At the hearing before the ALJ, on June 12, 2002, Westmoreland elicited testimony from Amick regarding diagnoses from Drs. Klamath and Salvador. According to Amick's testimony, Dr. Klamath told him he was totally disabled by Black Lung "probably two or three years ago," (J.A. at 594), and Dr. Salvador told him there was "something wrong with [his] lungs . . . probably been four years ago." (J.A. at 595.) When asked whether Dr. Salvador told him that he was disabled, Amick testified, "I just don't remember whether he told me at that time or not." (J.A. at 596.) Based on Amick's testimony in June 2002, the communication from Dr. Salvador would have taken place around

---

[1]Pursuant to 20 C.F.R. § 725.308(c), claims for benefits are presumed to be timely, and the employer bears the burden of production that a claim is untimely.

9

June 1998, and the communication from Dr. Klamath would have taken place around 1999 or 2000. Because none of these dates is more than three years before Amick filed this claim for benefits, Westmoreland has not carried its burden to show that Amick's claim was untimely.

Ideally, the ALJ would have made explicit the factual finding that the communication from Dr. Klamath and/or Dr. Salvador occurred in 1998 at the earliest. Because we find, however, that this is the only permissible inference to be drawn from the undisputed evidence, we find that the ALJ's failure to make these factual findings is harmless error. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (holding that appeals courts need not reverse agency action because of a harmless error).

B.

We turn next to Westmoreland's argument that the ALJ erred in applying certain amended regulations to Amick's claim. The Secretary revised Parts 718 and 725 of the black lung regulations in 2001. See 20 C.F.R. Parts 718 and 725 (2004). The amended regulations became effective on January 19, 2001. With the exception of certain sections identified in 20 C.F.R. § 725.2(c), the amended regulations apply to claims pending as of January 19, 2001. It is undisputed that the Secretary did not have the authority to promulgate retroactive rules. Accordingly, the only

10

question is whether the challenged regulations are, in fact, retroactive. Westmoreland argues that all of the amendments are impermissibly retroactive as applied to claims pending as of January 19, 2001.

As an initial matter, we note that the D.C. Circuit considered in some detail challenges to specific amended black lung regulations and found several of the amended regulations to be impermissibly retroactive. See Nat. Mining Ass'n v. Dept. of Labor, 292 F.3d 849 (D.C. Cir. 2002). The ALJ in this case, however, did not apply any of the regulations that the D.C. Circuit found to be impermissibly retroactive. (J.A. at 620 "I will apply the sections of the newly revised version of Part 718 (i.e. subparts A, C, and D) and 725 that took effect on January 19, 2001 that the court did not find impermissibly retroactive to the facts of the instant matter.".)

We stated the general framework for a retroactivity analysis in Chambers v. Reno, 307 F.3d 284 (4th Cir. 2002).

> A new statute does not produce a retroactive effect "merely because it is applied in a case arising from conduct antedating the statute's enactment." Landgraf, 511 U.S. at 269. The question instead is "whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 270. A statute would attach new legal consequences to prior events if its application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. at 280.

11

Chambers, 307 F.3d at 289. The only properly raised argument Westmoreland makes is that under amended 20 C.F.R. § 718.101(b), different quality standards applied to Dr. Rasmussen's examination of Amick on June 23, 2000, and Dr. Zaldivar's examination of Amick on January 24, 2001.[2] (Appellant's Br. at 16.) Westmoreland, however, fails to elaborate on how this regulation impaired its rights, increased its liability, or imposed new duties. Westmoreland does not mention any other specific regulation. We decline to review all of the amended regulations searching for some retroactive effect in the absence of any argument from Westmoreland regarding what new legal consequences the regulations impose. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (discussing abandonment of issues under Fed. R. App. P. 28(a)(9) when Appellant fails properly to raise and discuss issues in his opening brief). Moreover, we note that the ALJ did not fault Westmoreland for failing to comply with any of the amended regulations. Accordingly, the ALJ did not err in applying the amended regulations to Amick's claim that was pending on January 19, 2001.

---

[2]Westmoreland's only other explanation of how this regulation impaired its rights was raised for the first time in oral argument. Westmoreland argued that the application of revised 20 C.F.R. § 718.101(b) allowed the ALJ to discredit Dr. Spagnolo's opinion because Dr. Spagnolo believed pneumoconiosis to be a progressive disease only.

C.

Westmoreland next argues that the ALJ applied the wrong test to determine whether Amick established a material change in condition. Westmoreland argues that, when considering a duplicate claim, the ALJ must consider the old and new evidence together to determine whether a material change in condition occurred. Westmoreland's argument is entirely without merit. In this circuit, all that a miner must do to show a material change in condition is "<u>prove</u>, under all of the probative medical evidence of his condition <u>after</u> the prior denial, at least one of the elements previously adjudicated against him." <u>Lisa Lee Mines v. Director, Office of Workers' Comp. Programs</u>, 86 F.3d 1358, 1362 (4th Cir. 1996) (en banc), <u>cert. denied</u>, 519 U.S. 1090 (1997) (emphasis in original). We specifically rejected the Sixth Circuit's further requirement in <u>Sharondale Corp. v. Ross</u>, 42 F.3d 993, 999 (6th Cir. 1994) of "consideration of the evidence behind the earlier denial to determine whether it 'differ[s] qualitatively from the new evidence." <u>Id.</u> at 1363 n.11.


D.

Westmoreland argues that the ALJ erred in determining that Amick established the existence of pneumoconiosis by a preponderance of the evidence because the ALJ erred in determining which physicians' opinions to credit. We agree.

13

> The ALJ is charged with making factual findings, including evaluating the credibility of witnesses and weighing contradicting evidence. . . . Accordingly, we must affirm the Board if it properly determined that the ALJ's findings are supported by substantial evidence, keeping in mind that "a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis."

Doss v. Director, Office of Workers' Comp. Programs, 53 F.3d 654, 658-59 (4th Cir. 1995) (quoting Smith v. Director, OWCP, 843 F.2d 1053, 1057 (7th Cir. 1988).

To establish eligibility for benefits under 20 C.F.R. Part 718, a claimant must prove that (1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability.  Section 718.202(a) provides that

> [a] finding of the existence of pneumoconiosis may be made as follows:
> (1) A chest X-ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis . . . .
> . . . .
> (2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis . . . .
> (3) If the presumptions described in §§ 718.304, 718.305 or § 718.306 are applicable, it shall be presumed that the miner is or was suffering from pneumoconiosis.
> (4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

14

20 C.F.R. § 718.202(a) (2004). There were no autopsy or biopsy findings in this case, and none of the presumptions apply. Accordingly, the ALJ was left with the X-ray evidence and the medical opinion evidence. The ALJ concluded that the X-ray evidence was evenly balanced, and thus, did not establish pneumoconiosis. (J.A. at 622.) The ALJ then considered the medical opinion evidence, including the medical reports of Drs. Zaldivar, Spagnolo, Stewart, Castle, Daniel, Morgan, Koenig, Rasmussen, and Cohen.[3]

Westmoreland first argues that the ALJ erred by discrediting Drs. Zaldivar, Stewart, Castle, and Daniel based on the erroneous finding that they failed to address whether coal mine dust exposure contributed to Amick's chronic obstructive pulmonary disease (COPD). The ALJ held that "[b]ased on the failure of these physicians to discuss whether or not Claimant's chronic obstructive pulmonary disease was related to his coal mine employment, I accord less weight to their conclusions regarding the presence of pneumoconiosis since chronic obstructive pulmonary disease is encompassed within the definition of pneumoconiosis for purposes of entitlement to Black Lung benefits." (J.A. at 623.) This finding is not supported by substantial evidence. A review of the record

---

[3]We note that after determining that the medical opinion evidence supported a finding of pneumoconiosis, the ALJ properly considered the medical opinion evidence together with the equivocal X-ray evidence to determine whether pneumoconiosis was present. See Island Creek Coal Co. v. Compton, 211 F.3d 203 (4th Cir. 2000).

15

reveals that Drs. Zaldivar, Stewart, and Castle each found that Amick's COPD was <u>not</u> related to his coal mine employment. (<u>See</u> J.A. at 248 (Zaldivar - "There is no evidence of coal workers' pneumoconiosis, <u>nor any dust disease of the lungs</u> in this case.") (emphasis added); J.A. at 282 (Castle - "<u>These findings are not in keeping with coal mine dust induced lung disease</u>.") (emphasis added); J.A. at 352 (Stewart - "[T]his disability impairment is secondary to chronic obstructive pulmonary disease from smoking as well as the asthmatic component. <u>It is not related in whole or in part secondary to coal dust exposure</u> or coal workers pneumoconiosis." (emphasis added).)

The Board appears to have recognized that the ALJ's finding was factually incorrect because it noted that "[f]urther review of the administrative law judge's Decision and Order . . . shows that he was aware that these doctors discussed the cause of claimant's chronic obstructive pulmonary disease and that he fully set forth his reasons for finding that their conclusions that chronic obstructive pulmonary disease was due to smoking, not coal mine employment, were unreasoned." (J.A. at 635.) It is true that "further review" of the ALJ's decision reveals passages in the "Medical Evidence" section where the ALJ noted that the doctors opined that Amick's COPD was not due to coal dust exposure, but the ALJ was merely describing the reports in this section and not weighing the evidence. When giving his reasons for discrediting

16

the doctors' opinions, the ALJ specifically relied on the failure of the doctors to discuss the etiology of Amick's COPD.

The ALJ also discredited Dr. Spagnolo and several other physicians[4] for failing to consider the medical literature cited by Dr. Koenig and for discussing only the presence of simple coal workers' pneumoconiosis as demonstrated on chest X-ray. According to the ALJ, "[t]hey did not . . . discuss legal pneumoconiosis, nor did they counter Dr. Koening's [sic] findings that the chronic obstructive pulmonary disease present was due, at least in part, to coal mine employment and coal dust exposure."[5] (J.A. at 623.) First, as the dissenting Board judge noted, if a physician provides a reasoned opinion based on his evaluation of the evidence, he need not also address the conclusions of other physicians. Second, as discussed above, the factual finding that Drs. Zaldivar, Stewart, and Castle did not address legal pneumoconiosis is simply

---

[4]The ALJ does not make clear which other physicians he includes with Dr. Spagnolo. We have assumed that the ALJ intended to include Drs. Zaldivar, Stewart, Castle, and Daniel.

[5]"Legal" pneumoconiosis is a statutory term referring to "any 'chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or <u>substantially aggravated by</u>, dust exposure in coal mine employment.' " <u>Gulf & W. Indus. v. Ling</u>, 176 F.3d 226, 231 (4th Cir. 1999) (quoting and adding emphasis to 20 C.F.R. § 718.201 (2003)). "The term is thus broader than 'medical' or 'clinical' pneumoconiosis, as 'legal' pneumoconiosis also encompasses 'diseases whose etiology is not the inhalation of coal dust, but whose respiratory and pulmonary symptomatology have nonetheless been made worse by coal dust exposure.' " <u>Lewis Coal Co. v. Director, Office of Workers' Comp. Programs</u>, 373 F.3d 570, 577 (4th Cir. 2004) (quoting <u>Clinchfield Coal Co. v. Fuller</u>, 180 F.3d 622, 625 (4th Cir.1999)).

17

incorrect. Dr. Spagnolo also considered whether legal pneumoconiosis was present. (See J.A. at 319 (Spagnolo - "Mr. Amick does not have a chronic restrictive or obstructive pulmonary impairment arising out of coalmine [sic] employment and further he does not have any chronic disease of the lung arising from his coal mine employment.").

The Board attempted to bolster the ALJ's findings by concluding that the ALJ "implicitly" found that Spagnolo, Zaldivar, and Castle erred by not considering the progressive nature of pneumoconiosis. (J.A. at 635-36.) The ALJ, however, did not give this as a reason for discrediting the doctors' opinions, and we must "judge the propriety of the [ALJ's] action solely by the grounds invoked by the [ALJ]." SEC v. Chenery, 332 U.S. 194, 196 (1947)(sustaining SEC order upon review of the Commission's grounds).

Westmoreland also argues that the ALJ erred in discrediting Dr. Morgan. The ALJ's conclusion with regard to Dr. Morgan suffers from the same flaw as its conclusions regarding the other physicians. The ALJ discredited Dr. Morgan's report as contradictory to the Act because "[h]e stated the medical authorities and studies which he credits are against a finding that emphysema and airway obstruction are related to coal mine employment." (J.A. at 624.) As the Board recognized, Dr. Morgan's report was not contradictory to the Act because "Dr. Morgan did not

18

state that an obstructive impairment could not arise out of coal mine employment," he merely stated that Amick's obstructive component did not arise out of coal mine employment. (J.A. at 636; See J.A. at 387 (Morgan's report – "[C]oal miners develop airways obstruction and bronchitis. They also develop focal dust emphysema. The latter, however, is not the same condition as is centriacinar emphysema which results from cigarette smoking.").) The Board tries to fix the ALJ's error by holding that the ALJ also discredited Dr. Morgan because he based his opinion on the lack of radiographic evidence of dust disease and the progressive nature of Amick's disease. The ALJ's opinion shows that the ALJ was aware of the contents of Dr. Morgan's opinion, but the only reason given by the ALJ for discrediting him is that his opinion was contradictory to the Act.

Although the Board's conclusions about the credibility of the doctors might be supported by substantial evidence,[6] it is the ALJ's factual findings that we must review. The reasons that the ALJ gave for discrediting the doctors' opinions are not supported by substantial evidence. Accordingly, we vacate the ALJ's decision and remand for reconsideration of the medical opinion evidence. We

---

[6]We note that a conclusion that a miner does not suffer from legal pneumoconiosis based on a negative x-ray might be construed as hostile or contradictory to the BLBA because 20 C.F.R. § 718.201 allows a miner to prove pneumoconiosis based on medical opinion evidence even in the absence of qualifying X-rays.

19

note that on remand, the ALJ should be more explicit about the relative credentials of the doctors as well.

Because we vacate the award of benefits, we need not address Westmoreland's argument that the ALJ erred by awarding benefits payable beginning with the month in which Amick filed his claim, pursuant to the default entitlement date provided for in 20 C.F.R. § 725.503.

## III.

For the foregoing reasons, we vacate the award of benefits and remand to the ALJ for reconsideration of the medical opinion evidence.

<u>VACATED AND REMANDED</u>

20