**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-2172**

WESTMORELAND COAL COMPANY, INCORPORATED,

             Petitioner,

     v.

CHARLES M. AMICK; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS,

             Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(05-1000-BLA)

Argued: May 15, 2008                 Decided: August 18, 2008

Before WILKINSON and GREGORY, Circuit Judges, and Henry F.
FLOYD, United States District Judge for the District of South
Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge Wilkinson wrote the
opinion, in which Judge Floyd joined. Judge Gregory wrote a
dissenting opinion.

**ARGUED:** Douglas Allan Smoot, JACKSON & KELLY, PLLC, Charleston,
West Virginia, for Petitioner. John J. Appelbaum, WASHINGTON &
LEE UNIVERSITY, School of Law, Lexington, Virginia, for
Respondents. **ON BRIEF:** Kathy L. Snyder, JACKSON & KELLY, PLLC,
Morgantown, West Virginia, for Petitioner. Mary Z. Natkin,

Renae Patrick, Thomas J. Maas, WASHINGTON & LEE UNIVERSITY, School of Law, Lexington, Virginia, for Respondent Charles M. Amick. Jonathan L. Snare, Acting Solicitor of Labor, Rae Ellen Frank James, Deputy Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, Richard A. Seid, Senior Attorney, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Federal Respondent.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Westmoreland Coal Company ("Westmoreland"), for the second time, petitions for review of a decision and order of the Department of Labor's Benefits Review Board ("BRB") affirming the Administrative Law Judge's ("ALJ") award of black lung benefits to Charles Moore Amick, now deceased. In our prior consideration of this case, we affirmed all findings of the ALJ except those related to the crediting and discrediting of various medical opinions, and we remanded to the ALJ for reconsideration of the medical opinion evidence. On appeal, Westmoreland again contends that the award of benefits to Mr. Amick must be set aside because the ALJ's decision to give more weight to the opinions of Mr. Amick's doctors and less weight to those of Westmoreland's doctors was irrational and unsupported by substantial evidence. Because the decision to award benefits to Mr. Amick is supported by substantial evidence, we affirm the order of the BRB.

I.

A.

The Black Lung Benefits Act ("BLBA") provides benefits to coal miners who are totally disabled because of pneumoconiosis, also known as black lung disease, and to the surviving

3

dependents of coal miners who have died from the disease. 30 U.S.C. § 901(a) (2000); Mullins Coal Co. v. Dir., OWCP, 484 U.S. 135, 138 (1987). A coal miner or his surviving dependent may seek benefits under the BLBA by filing a claim with the District Director in the Department of Labor's Office of Workers' Compensation Programs, who determines whether a particular claimant is eligible for benefits and which employer will be responsible for those benefits. See 20 C.F.R. §§ 725.301-725.423 (2007). After the District Director makes a determination about benefits, either party may appeal and request a hearing before an ALJ. Id. §§ 725.450-725.480. The ALJ's decision is appealable to the BRB, id. § 725.481, and then to the court of appeals for the circuit in which the respiratory impairment occurred. 33 U.S.C. § 921(c) (2000); 20 C.F.R. § 725.482.

The BLBA defines pneumoconiosis as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b) (2000). As of January 2001, 20 C.F.R. § 718.201(c) made clear the long-held understanding by the courts of appeals that pneumoconiosis is a "latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." See, e.g., Mullins

4

Coal Co., 484 U.S. at 151; LaBelle Processing Co. v. Swarrow, 72 F.3d 308, 314 (3d Cir. 1995); Lovilla Coal Co. v. Harvey, 109 F.3d 445, 450 (8th Cir. 1997); Orange v. Island Creek Coal Co., 786 F.2d 724, 727 (6th Cir. 1986); Consolid. Coal Co. v. Chubb, 741 F.2d 967, 973 (7th Cir. 1984).

As of January 2001, federal regulations also made clear what courts had long recognized, namely, that pneumoconiosis as defined by the BLBA has both a "clinical" and a "legal" manifestation.  20 C.F.R. § 718.201(a)(1)-(2); see, e.g., Nat'l Mining Ass'n v. Dep't. of Labor, 292 F.3d 849, 869 (D.C. Cir. 2002) (noting that the distinction between clinical and legal pneumoconiosis is recognized by all the circuits that considered the issue); Gulf and Western Industries v. Ling, 176 F.3d 226, 231-32 (4th Cir. 1999).  Clinical pneumoconiosis, also known as "medical pneumoconiosis," is "characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1).  Legal pneumoconiosis is defined much more broadly, and includes "any chronic lung disease or impairment and its sequelae arising out of coal mine employment."  Id.  § 718.201(a)(2).

5

Charles Moore Amick, now deceased, worked as a coal miner for thirty-three years. From 1946 until 1962, Mr. Amick worked in strip mining, and from 1962 until he retired in 1983, he worked underground. During those years, he performed numerous jobs: truck driver, mechanic, electrician, bulldozer operator, timberman, cutting machine operator, and scoop operator. During his last eleven years as a coal mine employee, Mr. Amick ran a supply motor, which required him to load and unload roof bolts, timbers, and other supplies. Mr. Amick also had smoked roughly one pack of cigarettes each day from 1941 until around 1988.

In December of 1980, Mr. Amick filed a claim for black lung benefits, which the District Director denied in July of 1981. Mr. Amick applied again in April 1983, and the District Director denied his claim in May of 1984. Mr. Amick applied for benefits a third time in March of 2000, and this time the District Director awarded benefits. On appeal to the ALJ, the award was affirmed, on the grounds that Mr. Amick had proven the existence of total disability due to pneumoconiosis.

In affirming the District Director's award of benefits, the ALJ considered the opinions of numerous physicians, all of whom agreed that Mr. Amick had a chronic obstructive pulmonary disease (COPD) which rendered him "totally disabled" as defined

6

by federal regulations. See 20 C.F.R. § 718.204(b)(1). The doctors disagreed, however, as to the cause of Mr. Amick's impairment. Mr. Amick's doctors -- Drs. Cohen and Koenig, as well as a doctor for the Department of Labor, Dr. Rasmussen -- found that his COPD was due, at least in part, to exposure to coal mine dust during his coal mine employment. Westmoreland's doctors -- Drs. Zaldivar, Stewart, Castle, Spagnolo, and Morgan, as well as a doctor for the Department of Labor, Dr. Daniel -- all opined that Mr. Amick's impairment was the result of his long-time smoking habit.

The ALJ found the opinions of Mr. Amick's doctors more persuasive than those of Westmoreland's physicians, and thus awarded benefits to Mr. Amick. The BRB affirmed the ALJ's decision. Amick v. Westmoreland Coal Co., BRB No. 03-0256 BLA (Jan. 21, 2004). On appeal, this court affirmed the BRB's holdings that one, Mr. Amick's claim was timely filed, that two, the ALJ did not err in applying amended portions of 20 C.F.R. §§ 718 and 725 to Mr. Amick's claims, and that three, the ALJ applied the correct test to determine whether Mr. Amick had established a material change in condition. Westmoreland Coal Co. v. Amick, 123 Fed. Appx. 525, 527-530 (4th Cir. 2004).

However, this court vacated the award of black lung benefits to Mr. Amick and remanded the case for further

consideration on the grounds that, although the BRB's conclusions regarding the credibility of the doctors "might be supported by substantial evidence," the reasons given by the ALJ for discrediting Westmoreland's doctors were not supported by substantial evidence in the record.[1] Id. at 533.

On remand, the ALJ again awarded benefits to Mr. Amick. In that opinion, the ALJ noted that the opinions of Drs. Zaldivar, Stewart, Castle, Spagnolo, Cohen, and Koenig were entitled to the most deference because those physicians were board-certified in pulmonary disease. Again, though, the ALJ found the opinions of Drs. Cohen and Koenig more persuasive than those of the other physicians, noting that those opinions -- unlike those of Westmoreland's doctors -- discussed the latent and progressive nature of pneumoconiosis, were well supported by medical literature most consistent with the findings of the Department of Labor regarding the nature of pneumoconiosis, and took into

---

[1]In particular, this court noted that, contrary to the ALJ's findings otherwise, Drs. Zaldivar, Stewart, and Castle had indeed found that Mr. Amick's COPD was unrelated to his coal mining employment, and Drs. Zaldivar, Stewart, Castle, and Spagnolo had in fact addressed legal pneumoconiosis in their opinions. Amick, 123 Fed. Appx. at 532-33. Further, we held that Westmoreland's physicians were not, as the ALJ had suggested, required to consider medical literature presented by Dr. Koenig. Finally, we noted that Dr. Morgan's opinion did not contradict the BLBA, and thus the ALJ erred in discrediting it for that reason alone. Id. at 532-33.

8

account the possible effects of both cigarette smoking and coal mine dust exposure on Mr. Amick's condition. The BRB affirmed, noting that the ALJ had followed this court's directives on remand and had properly exercised his discretion in determining which medical opinions were most persuasive.

Westmoreland timely appeals.

## II.

Westmoreland attacks the ALJ's reasons for awarding benefits to Mr. Amick as irrational and unsupported by substantial evidence. We must affirm the decision of the BRB if it properly determined that the ALJ's findings were supported by substantial evidence in the record considered as a whole. See, e.g., Doss v. Dir., OWCP, 53 F.3d 654, 658 (4th Cir. 1995). In so doing, we bear in mind that it is the role of the ALJ -- who has familiarity with this field -- to make factual findings, to evaluate the credibility of witnesses, and to weigh conflicting evidence. Id. Moreover, we note that "a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis." Id. at 659. Guided by these principles, we turn to Westmoreland's specific claims.

9

A.

Westmoreland first contends that the ALJ's decision to credit the opinions of Drs. Cohen and Koenig was irrational and unsupported by substantial evidence. Contrary to Westmoreland's argument, however, the evidence in the record supporting the ALJ's conclusions is sufficiently substantial "as a reasonable mind might accept as adequate to support" the ALJ's decision. See Richardson v. Perales, 402 U.S. 389, 401 (1971); see also 5 U.S.C. § 557(c)(3)(A) (requiring an ALJ to provide an adequate explanation for his findings and conclusions). In particular, the ALJ first noted that both Drs. Cohen and Koenig, unlike Westmoreland's physicians, recognized and discussed the latent and progressive nature of pneumoconiosis. For example, as the BRB pointed out, both Drs. Koenig and Cohen considered the relationship between the progressive nature of Mr. Amick's disability (as shown by Mr. Amick's worsening pulmonary function test results from 1983 to 2001, his worsening diffusion impairment from 1991 to 2001, and his worsening hypoxemia at rest) and the progressive nature of legal and clinical pneumoconiosis.

The ALJ also explained that the opinions of Drs. Cohen and Koenig included a thorough discussion of (and were well supported by) medical literature that was consistent with the

Department of Labor's findings that pneumoconiosis is a latent and progressive disease, and that an obstructive impairment may be "legal pneumoconiosis." In fact, Dr. Koenig's conclusions were supported by forty-two published, peer-reviewed articles. Finally, the ALJ credited the opinions of Drs. Cohen and Koenig because, in contrast with the opinions of Westmoreland's doctors, they both specifically and clearly addressed the possible contribution of both cigarette smoke and coal dust to Mr. Amick's disability. See Peerless Eagle Coal Co. v. Taylor, 107 F.3d 867, 867 (Table) (4th Cir. 1997) (approving the ALJ's decision to discredit a physician for failing to explain his conclusions "that smoking was the sole cause of the miner's breathing impairment . . . and that coal dust exposure played no role at all.") As Dr. Koenig's report explained, the importance of considering both possible contributing factors is highlighted by the findings of numerous medical studies, which indicate that the symptoms, pulmonary function tests, and chest x-ray appearance of COPD are identical regardless of whether the COPD is caused by coal dust, cigarette smoke, or both.

Nonetheless, Westmoreland contends that the ALJ's reasons for crediting the opinions of these two doctors were invalid. To begin, Westmoreland argues that the black lung regulations do not demand that physicians discuss the latent and progressive

11

nature of pneumoconiosis, and thus, the ALJ's decision to credit the opinions of Drs. Cohen and Koenig for doing so was error. While true that the regulations do not impose such a requirement, considering that both the black lung regulations as well as numerous, long-standing decisions of the courts of appeals recognize the progressivity of pneumoconiosis, the ALJ was not precluded from considering as more persuasive the opinions of those doctors who took that characteristic of pneumoconiosis into account. This is especially true in this case, given that the worsening of Mr. Amick's symptoms did not occur until eight years after he retired from his coal mining employment.

Westmoreland also insists that Drs. Cohen and Koenig's thorough discussion of medical literature cannot provide a basis for the ALJ's decision to credit his opinion, because the ALJ failed to "resolv[e] the conflicts" between the literature cited by Drs. Cohen and Koenig and that cited by Drs. Zaldivar and Morgan. However, as the ALJ recognized, and as the BRB explained in detail, the Department of Labor already reviewed the medical and scientific literature before promulgating its revised regulations. See generally 65 Fed. Reg. 79,937-51 (Dec. 20, 2000). The ALJ's decision to credit Drs. Cohen and Koenig for their thorough discussion of the medical literature was

12

therefore valid, in that it was, as the ALJ and BRB made clear, more consistent with the Department of Labor's findings that pneumoconiosis is latent and progressive and that an obstructive impairment may be "legal pneumoconiosis." 20 C.F.R. § 718.201(a)(2), (c).

B.

Westmoreland next contends that the ALJ's decision to discredit Westmoreland's doctors was irrational and unsupported by substantial evidence. Again, however, the ALJ's decision to afford less weight to the opinions of Westmoreland's doctors is amply supported by evidence in the record. Regarding Dr. Zaldivar specifically, the ALJ found his opinion less persuasive because he made contradictory statements about the relevance of x-ray evidence in diagnosing pneumoconiosis. For example, Dr. Zaldivar acknowledged that a positive chest x-ray finding was not needed for a diagnosis of coal workers' pneumoconiosis, yet he also stated that "[t]he x-ray is absolutely necessary to determine that the exposure has been high enough for [Mr. Amick] to inhale and to retain the dust." See Midland Coal Co. v. Dir., OWCP, 358 F.3d 486, 492 (7th Cir. 2004) (approving a similar ALJ finding on the grounds that requiring x-ray evidence of pneumoconiosis is contrary to the BLBA).

Moreover, regarding Drs. Daniel, Castle, Spagnolo, Stewart, and Morgan, the ALJ found their opinions less persuasive because none of them took into account the latent and progressive nature of pneumoconiosis. For example, Dr. Castle concluded that Mr. Amick's impairment could not have been caused by coal dust exposure because Mr. Amick stopped working in 1983 and the deterioration of his condition began in 1991. Similarly, Dr. Stewart cited Mr. Amick's deterioration after 1991 as a basis for attributing his COPD solely to cigarette smoking. These findings, as both the ALJ and the BRB pointed out, ignore the fact that pneumoconiosis is a latent and progressive disease. See, e.g., Roberts & Schaefer Co. v. Dir., OWCP, 400 F.3d 992, 999 (7th Cir. 2005) (holding that it is appropriate for an ALJ to give less weight to a physician's opinion when it lacked consideration of the latent and progressive nature of pneumoconiosis); Sea "B" Mining Co. v. Dunford, 188 Fed. Appx. 191, 199 (4th Cir. 2006) (same); Four L Coal Co. v. Dir., OWCP, 157 Fed. Appx. 551, 555 (4th Cir. 2005) (same); see also Lewis Coal Co. v. Dir., OWCP, 373 F.3d 570, 580 (4th Cir. 2004) ("Little weight can be given to medical findings that conflict with the BLBA's implementing regulations," including the finding that pneumoconiosis is a "progressive disease.").

14

Finally, the ALJ found the opinions of all of Westmoreland's doctors less persuasive than those of Drs. Cohen and Koenig because they failed to take into account both cigarette smoking and coal mine dust exposure as potential causes of Mr. Amick's COPD. In particular, the ALJ discredited the opinions of Drs. Daniel, Castle, Spagnolo, and Stewart for failing to explain why no part of Mr. Amick's disability was due to thirty-three years of coal dust exposure. See Island Creek Coal Co. v. Compton, 211 F.3d 203, 213 (4th Cir. 2000) (approving as valid a similar ALJ finding). Relatedly, the ALJ explained that the opinions of Drs. Daniel, Morgan, and Zaldivar relied on little more than negative x-ray findings to support their conclusion that Mr. Amick's impairment was solely the result of cigarette smoking. See 30 U.S.C. § 923(b). ("[N]o claim for benefits . . . shall be denied solely on the basis of the results of a chest roentgenogram.")

Westmoreland, however, mounts three primary challenges to the ALJ's explanations for discrediting the opinions of these doctors. First, Westmoreland contends that the ALJ erred by "trying to manufacture conflicts in Dr. Zaldivar's testimony" regarding the necessity of a positive chest x-ray. As the BRB recognized, however, there is ample support in the record showing that at times Dr. Zaldivar indicated that a chest x-ray

15

was not needed to establish the existence of pneumoconiosis, and at others he indicated that a positive chest x-ray was required. Amick, BRB No. 05-1000 BLA at 4-5 (citing various portions of the record).

Westmoreland also contends that the ALJ erred in discrediting the opinions of Drs. Daniel, Castle, Spagnolo, Stewart, and Morgan for not discussing the latent and progressive nature of pneumoconiosis. However, we already discussed above that the ALJ may consider medical opinions less persuasive if they do not discuss the progressivity of pneumoconiosis. Further, we reject Westmoreland's additional argument that the ALJ's decision to discredit these physicians for not discussing pneumoconiosis's progressivity constituted an impermissible retroactive application of 20 C.F.R. § 718.201(c). Westmoreland has already challenged the application of the revised 20 C.F.R. §§ 718 and 725 to Mr. Amick's claim, and in our 2004 decision, we held that the ALJ did not err in applying the amended regulations to that claim. Amick, 123 Fed. Appx. at 530. That decision is the "law of the case," and we thus decline to revisit Westmoreland's challenge to the application of 20 C.F.R. § 718.201 here. See Arizona v. California, 460 U.S. 605, 618 (1983).

16

Finally, Westmoreland argues that the ALJ impermissibly shifted the burden of proof to Westmoreland's doctors by requiring them to "rule out" coal dust exposure as a cause of Mr. Amick's COPD. Westmoreland is of course correct that the claimant has the burden of proving every element of entitlement to benefits under the BLBA. See 5 U.S.C. § 556(d); Dir., OWCP v. Greenwich Colleries, 512 U.S. 267, 280-81 (1994). However, nothing about the ALJ's decision to discredit Westmoreland's doctors for not discussing coal dust as a potential contributing cause of Mr. Amick's COPD relieved Drs. Cohen and Koenig of their burden to prove every element of Mr. Amick's claim for benefits. And as discussed above, Drs. Cohen and Koenig supported their conclusions that Mr. Amick's totally disabling impairment was due, at least in part, to thirty-three years of coal mine dust exposure. Nevertheless, even if such burden shifting occurred, the ALJ's error was harmless here because, as discussed, the ALJ provided numerous other valid reasons for giving less weight to the opinions of Westmoreland's doctors.[2]

---

[2]Westmoreland also argues that the ALJ erred in discrediting Drs. Zaldivar and Daniel on the grounds that they supported their conclusions regarding the cause of Mr. Amick's COPD with little other than x-ray evidence. Specifically, Westmoreland contends that this finding is factually inaccurate, because Drs. Zaldivar and Daniel also cited Mr. Amick's response to bronchodilator treatment to bolster their conclusions. The BRB rejected this argument on the grounds that bronchodilator

17

Westmoreland sets forth additional challenges to the ALJ's determinations regarding the credibility of the physicians, all of which we have reviewed with care and find lack merit. In essence, this case required the ALJ to weigh the credibility of various opinions from a number of highly qualified doctors. In so doing, the ALJ chose which opinions he found most credible, and he provided an adequate and reasonable explanation for his choice. See 5 U.S.C. § 557(c)(3)(A). It is not our job to serve as a "super ALJ" and re-weigh all of the evidence, as Westmoreland essentially urges, in order to reach a contrary result.

For the foregoing reasons, the order of the BRB is affirmed.

AFFIRMED

---

treatment response is unrelated to the potential causes of Mr. Amick's COPD. Amick, BRB No. 05-1000 BLA at 10. Nevertheless, even if, as Westmoreland contends, the BRB's rejection of this argument constituted a medical conclusion that lacks support in the record, the ALJ articulated numerous other valid reasons for discrediting the opinions of Drs. Zaldivar and Daniel.

18

GREGORY, Circuit Judge, dissenting:

The regulation defining pneumoconiosis does not require a physician to discuss the "latent and progressive" nature of pneumoconiosis. See 20 C.F.R. § 718.201. Since the Administrative Law Judge ("ALJ") incorrectly discredited Westmoreland's physicians for their failure to do so, and committed several factual errors[1], I am compelled to dissent.

The parties agree that Amick suffers from chronic obstructive pulmonary disease ("COPD") that is totally disabling. Their dispute is limited to whether Amick's COPD is caused by coal mine dust, smoking, or a combination of both. The employer's doctors - Drs. Zaldivar, Stewart, Castle, Daniel, Spagnolo, and Morgan - uniformly opine that Amick's habit of smoking approximately one pack of cigarettes per day for nearly forty years was the cause of his COPD. Each of Westmoreland's doctors provided significant testimony detailing the rationale for their decisions, yet the ALJ discounted all of the doctors' conclusions, in part, because they did not address the latency or progressiveness of pneumoconiosis.[2] For example, the ALJ

---

[1]Judge Smith's opinion concurring and dissenting from the the Benefits Review Board's ("BRB") decision sets out some of these factual errors. (See J.A. 694-697.)

[2]While many of the doctors did not explicitly address this issue, Dr. Zaldivar did so. Indeed, the Benefits Review Board ("BRB") quoted the very portion of Dr. Zaldivar's trial testimony

19

dismissed Dr. Spagnolo's opinion because he "did not discuss the progressive and latent nature of coal mine dust exposure." (J.A. 674.) The majority affirmed the ALJ's reliance on this "omission" to devalue the testimony of Westmoreland's doctors, but it does not cite to any direct precedent in support. The cases cited by the majority stand for the unassailable proposition that a doctor cannot base his opinion on the "flawed premise that a miner with no apparent pulmonary impairment upon leaving the coal mines could never thereafter develop a coal dust related impairment." <u>Four L Coal Co. v. Dir., OWCP</u>, 157 Fed. Appx. 551, 555 (4th Cir. 2005). However, in the instant case, only Dr. Castle, in my view committed this error. The testimony and findings of Westmoreland's remaining physicians did not indicate that any of them disagreed with the fact that pneumoconiosis is a latent and progressive disease.

Indeed, as the majority correctly points out, § 718.201(c) "made clear the long-held understanding by the courts of appeals that pneumoconiosis is a 'latent and progressive disease.'" (Maj. Op. 4.) Beyond the court of appeals, both the Secretary of Labor and the National Institute of Occupational Health and Safety concurred that § 781.201(c) codified the widely accepted

in which he specifically addressed the progressiveness of pneumoconiosis. (J.A. 686, n.3.)

20

scientific view regarding the latency and progressiveness of pneumoconiosis. The very structure of the Black Lung Benefits Act ("BLBA") implicitly recognizes the latency and progressiveness of pneumoconiosis by allowing miners to refile their previously unsuccessful claims if their medical condition has changed.

The sole question that doctors must address in evaluating a coal miner's eligibility for black lung benefits under the BLBA is whether the claimant, at the time of the exam, has clinical or legal pneumoconiosis. Neither the literal terms of the relevant regulations nor any case law provide that an employer's doctors must discuss the latency or progressiveness of pneumoconiosis presumably because § 718.201(c) explicitly provides that this is the case.

While there may be substantial evidence to support awarding Amick benefits, I would remand this case to the ALJ for further consideration in light of this legal error and for the reasons set forth in Judge Smith's opinion. As such, I respectfully dissent.